David G. Barker (#024657)
Cameron Schlagel (*pro hac vice* forthcoming)
Emily R. Parker (#036286)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: dbarker@swlaw.com
         cschlgel@swlaw.com
         eparker@swlaw.com
Attorneys for Plaintiff Carlisle Interconnect
Technologies, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlisle Interconnect Technologies, Inc., a Delaware corporation, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | (Jury Trial Demanded) |
| Foresight Finishing, LLC, an Arizona limited liability company; Foresight Finishing Properties, LLC, an Arizona limited liability company, | |
| Defendants. | |

Plaintiff Carlisle Interconnect Technologies, Inc. ("Plaintiff" or "CIT") files this Complaint against Defendants Foresight Finishing, LLC, and Foresight Finishing Properties, LLC (jointly, "Defendants" or "Foresight"), and alleges as follows:

**PRELIMINARY STATEMENT**

1. CIT is one of the interconnect technology industry's leading sources for high-performance interconnect solutions. CIT's decades-long effort to acquire, develop, and maintain its confidential trade secrets, including product designs, proprietary manufacturing processes, and other confidential information and intellectual property has led to this success. CIT's proprietary designs and processes and trade secrets are critical to its business

1    strategy. CIT diligently protects the security and confidentiality of its proprietary
2    information and trade secrets.

3        2.    From April 2020 through August 2020, CIT terminated four employees who,
4    through their employment with CIT, were trained to use and intimately involved with
5    certain CIT proprietary manufacturing processes and trade secrets. The employees were and
6    remain bound by strict confidentiality and non-disclosure requirements with respect to those
7    proprietary processes and trade secrets.

8        3.    Upon information and belief, Defendant Foresight hired the four former CIT
9    employees. Shortly thereafter, on or about February 24, 2022, Foresight publicly announced
10   on its website and social media platforms a new capability to manufacture certain
11   components using a process that, upon information and belief, is the same as one of CIT's
12   proprietary manufacturing processes.

13       4.    Through this Complaint, CIT seeks damages, an injunction, and other relief
14   pursuant to, *inter alia*, the Defend Trade Secrets Act (18 U.S.C. § 1836), the Arizona
15   Uniform Trade Secrets Act (A.R.S. §§ 44-401, *et seq.*), and the common law of the State of
16   Arizona.

## JURISDICTION AND VENUE

18       5.    This Court has original jurisdiction under 28 U.S.C. § 1331 for claims arising
19   under the Defend Trade Secrets Act, and supplemental jurisdiction under 28 U.S.C. § 1367
20   for the related state-law claims.

21       6.    This Court has personal jurisdiction over Defendant because Defendant
22   maintains its principal place of business in Maricopa County, Arizona, and has committed
23   acts of trade secret misappropriation and other torts in the District of Arizona.

24       7.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), (2) and
25   (c)(2) because Defendant resides in the District of Arizona and a substantial part of the
26   events giving rise to the claims occurred in this judicial district.

## THE PARTIES

8. CIT is a Delaware corporation with its principal place of business in St. Johns County, Florida. CIT has business locations throughout the United States and abroad.

9. CIT designs, builds, tests, certifies, and delivers comprehensive, high-performance interconnect solutions to its customers in the Aerospace, Military, Space, Test and Measurement, Industrial and Medical Technology markets. CIT provides solutions including unique cable configurations, custom high-frequency connectors, complete cable assemblies of any complexity, and specialized complex harnesses, racks, and structures.

10. Foresight Finishing, LLC is an Arizona Limited Liability Company with its principal place of business in Maricopa County, Arizona.

11. Foresight Finishing Properties, LLC is an Arizona Limited Liability Company with its principal place of business in Maricopa County, Arizona.

12. Foresight claims to specialize in plating connector contracts, RF components, and selective plating of loose piece contacts. Foresight provides plating for Aerospace, Defense, Medical, Electronic, major OEMS and general job shop facilities.

## GENERAL ALLEGATIONS

13. CIT is headquartered in St. Augustine, Florida, with operations across the United States, as well as in Mexico, England, Europe, and China.

14. CIT has a long and distinguished history. CIT's predecessor, known as Tensolite, first ventured into the wire and electronics industry in the early 1940's. In 1944, Tensolite expanded into the insulated wire field when the Department of Defense awarded Tensolite a contract for the manufacture of electrically heated gloves and flying suits for Air Force pilots during World War II. In 1951, Tensolite became the first to use nickel-plated copper as the conductor material in high temperature, insulated wire and cable.

15. Tensolite continued its expansion through the 1950's and, in 1960, became part of the Carlisle group of companies. Due to groundbreaking innovations and acquisitions in the interconnect industry, Tensolite continued to expand its market presence through the late 2000's.

16. Tensolite changed its name to Carlisle Interconnect Technologies in 2008 after the acquisition of Carlyle Inc., which brought more interconnect capabilities to Tensolite.

### *CIT's Trade Secrets and Confidential Information*

17. In 2011, CIT acquired Tri-Star Electronics International, Inc. ("Tri-Star"), a leading worldwide supplier of electronic interconnect components for mission-critical applications for commercial aerospace, defense, and industrial customers.

18. As part of CIT's acquisition of Tri-Star, CIT acquired substantial intellectual property assets, trade secrets, and proprietary information, including an innovative, proprietary selective plating process (the "Selective Plating Process").

19. Typical metal plating involves creating an outer coating of metal—such as chromium, copper, gold, or nickel—to inhibit corrosion or to enhance the appearance of the parent metal component. The traditional process—widely used across the industry—involves immersing the metal in an acid solution (commonly referred to as a bath) with an anode electric current and cathode. The solution contains the required metal in an oxidized form. Through the process, the plating material binds on the parent metal to form an outer coating.

20. The Selective Plating Process, which is more efficient and superior to the traditional process described in the preceding paragraph, was painstakingly developed by Tri-Star at significant expense and over a considerable period of time, and was part of the consideration given in CIT's acquisition of Tri-Star.

21. Upon information and belief, the Selective Plating Process is unique in the industry. It is not generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from its use. As such, it has independent economic value and provides CIT a competitive advantage over its competitors.

22. CIT's ability to leverage the Selective Plating Process typically allows a reduction in the use of gold by anywhere from 65% to 85%, which can equate to approximately $125,000 to $200,000 in savings per every million pieces processed.

- 4 -

***CIT Takes Extensive Measures to Maintain the Secrecy and Confidentiality of its Trade Secrets and Proprietary Information***

23. At all relevant times, Tri-Star, and subsequently CIT, have taken reasonable measures to maintain the secrecy and confidentiality of the Selective Plating Process.

24. The Selective Plating Process is in a restricted access area of the broader facility. Only employees with the requisite security credentials can access the restricted area.

25. Likewise, CIT's confidential and proprietary information concerning the Selective Plating Process is stored on a secured, restricted access drive.

26. CIT employees are bound by the CIT Employee Handbook (the "Employee Handbook"). Among other things, the Employee Handbook provides:

   a. CIT property is accessed using issued badges or FOBs (specific by location). The badges or FOBs are issued at the time of hire. Employees are prohibited from loaning their badge to anyone for any reason. Failure to follow applicable building access protocols is subject to disciplinary action, including termination of employment.

   b. Files containing confidential or sensitive data may not be stored in any Personal Communication Device ("PCD") unless protected by approved encryption. Confidential or sensitive data **shall never** be stored on a personal PCD.

   c. Only authorized visitors are allowed on CIT's premises. All visitors and vendors must enter CIT's building through the main entrance where they must furnish identification and may be subject to further security screening checks.

27. CIT employees are also bound by the CIT Code of Conduct (the "Code of Conduct"), which includes prohibitions against:

   a. Disclosing confidential or proprietary information. Such information is defined as including, but is not limited to: confidential employee

information, financial records, sales information, confidential products, customer account information, supplier pricing agreements, and marketing or forecasting information.

    b.    Taking any action that creates a security or loss prevention risk.

    c.    Using equipment to videotape, audiotape or take photographs on CIT's property, or off CIT's property while on CIT business.

    d.    Using CIT's equipment to send or receive information in violation of federal or state law, in violation of CIT policy, or in violation of the property rights of another.

    e.    Stealing or attempting to steal CIT's property.

28.    As a condition of employment, many CIT employees are required to execute the Confidentiality and Discretion Agreement ("NDA") concerning CIT's confidential and proprietary information. Among other things, the NDA provides:

    a.    The employee acknowledges that the employee has access to sensitive information including, but not limited to:

        i.    Computer programs already developed or owned by CIT, or under a license for use by the same.

        ii.    Information received from CIT's clients, suppliers, subcontractors and other service providers.

        iii.    Business and engineering projects, designs and/or mold plans, formulas, lists of materials, and projects contracted by CIT.

        iv.    Information from CIT partners.

    b.    The employee agrees that the employee has been informed and understands their responsibility regarding confidential information. The employee knows that CIT's works, investigations and documents in-general, that are prepared by the employee, are confidential information owned by CIT and therefore are for its corresponding exclusive use and exploitation. Likewise, the employee understands

        what consequences the improper use of confidential information may have for CIT, as well as the consequences and sanctions that could be incurred by the employee for committing civil and criminal infractions from the improper handling of confidential information.

    c.    The employee commits to not provide, comment or transmit by any means the documents or information of CIT's affairs to any person who is not authorized by the company or by any of its affiliates, subsidiaries, controllers or controlled, nor to access CIT's files unless they have authorization from authorized personnel, recognizing that information contained in the files (manual or computerized) is not only confidential, but may also be privileged information that could provide personal, financial or other benefits.

    d.    Unless prior written authorization is first obtained from an authorized CIT official, the employee is prohibited from removing records, documents, studies or assets from the offices of CIT, or of any of its affiliates, subsidiaries, controlling or controlled companies, regardless if said goods and documents are the property of said companies.

    e.    The employee agrees not to use the information mentioned in any work outside CIT, directly or indirectly.

    f.    The employee agrees to keep all information and documentation owned by CIT or its affiliates or subsidiaries, or the companies with which they have business relationships, that are in possession of CIT, with the absolute discretion and confidence for the entirety of the employee's working relationship with CIT, a commitment that will continue for a period of five years beyond termination of employment with CIT.

29. As a condition of employment, certain CIT employees are required to execute the Employee Invention and Secrecy Agreement (the "Secrecy Agreement"), wherein the CIT employee acknowledges and agrees that, among other things:

   a. The employee may, in connection with their employment, from time to time (i) make inventions which relate to or are useful in connection with CIT's business and/or (ii) have imparted to him/her by or through CIT, confidential or secret information pertaining to CIT's business or the business of its customers.

   b. All rights, title and interest of the employee in and to all discoveries, inventions, and improvements, whether discovered alone or jointly with others, whether patentable or unpatentable ("Inventions") which relate to or are useful in connection with any aspect of the business of CIT, shall be and are assigned to CIT.

   c. Upon discovery of any Invention, the employee must make full written disclosure thereof to CIT.

   d. The employee agrees at all times, both during and after employment with CIT, to hold in confidence with respect to those who are not employees of CIT, any and all processes, formulas, Inventions, economic information, engineering data, technical and manufacturing information and know-how, and other confidential information or trade secrets concerning the business of CIT or of other firms with which CIT does business, which is disclosed to the employee by or through CIT.

### *The Former CIT Employees*

30. CIT gives relevant employees extensive training on how to use its proprietary processes, including the Selective Plating Process, and proprietary information regarding why and how those processes work that is not evident in any publicly available information.

31. CIT hires employees to work on specific processes and provides selective and extensive training to those employees regarding the subject processes.

### 1. Ana Valenzuela

32. On or about November 28, 2016, CIT hired Ana Valenzuela as a Selective Plating Engineer.

33. As a condition of her employment, Ms. Valenzuela agreed to the terms of the Employee Handbook and the Code of Conduct.

34. Ms. Valenzuela completed Data Classification and Security Training on or about August 25, 2017.

35. As a condition of her continued employment, Ms. Valenzuela completed required compliance training on or about August 25, 2017, November 22, 2017, and November 26, 2018.

36. On or about February 19, 2019, as a condition of her continued employment, Ms. Valenzuela agreed to the terms of and executed the Secrecy Agreement.

37. During Ms. Valenzuela's employment, CIT trained Ms. Valenzuela on the use of the Selective Plating Process.

38. Through her employment as a Selective Plating Engineer for CIT, Ms. Valenzuela had access to and gained intimate knowledge of certain CIT proprietary and confidential information and trade secrets, including the Selective Plating Process.

39. Upon information and belief, Foresight actively recruited Ms. Valenzuela and Ms. Valenzuela thereafter resigned from her employment with CIT on or about August 28, 2020.

### 2. Alfredo Graff

40. On or about January 4, 2017, CIT hired Alfredo Graff for the position of Maintenance Manager.

41. As a condition of his employment, Mr. Graff agreed to the terms of the Employee Handbook and the Code of Conduct.

42. As a condition of his continued employment, Mr. Graff completed Data Classification and Security Training on or about December 17, 2017.

43. As a condition of his continued employment, Mr. Graff completed required compliance training on or about December 5, 2017, and December 14, 2018.

44. On or about August 16, 2018, as a condition of his continued employment, Mr. Graff executed and agreed to the terms of the NDA.

45. On or about October 24, 2019, Mr. Graff completed additional training concerning the Code of Conduct.

46. During Mr. Graff's employment, CIT trained Mr. Graff on the use of the Selective Plating Process.

47. Through his employment as Maintenance Manager for CIT, Mr. Graff had access to and gained intimate knowledge of certain CIT proprietary and confidential information and trade secrets, including the Selective Plating Process.

48. CIT terminated Mr. Graff's employment on or about April 23, 2020.

### 3.   Glenn Foster

49. On or about November 28, 2016, CIT hired Glenn Foster for the position of Plating Manager.

50. As a condition of his employment, Mr. Foster agreed to the terms of the Employee Handbook and the Code of Conduct.

51. As a condition of his continued employment, Mr. Foster completed Data Classification and Security Training on or about August 25, 2017.

52. As a condition of his continued employment, Mr. Foster completed required compliance training on or about August 25, 2017, November 22, 2017, and December 3, 2018.

53. On or about August 13, 2018, as a condition of his continued employment, Mr. Foster executed and agreed to the terms of the NDA.

54. On or about October 23, 2019, Mr. Foster completed additional training concerning the Code of Conduct.

55. During Mr. Foster's employment, CIT trained Mr. Foster on the use of the Selective Plating Process.

56. Through his employment as Plating Manager for CIT, Mr. Foster had access to and gained intimate knowledge of certain CIT proprietary and confidential information and trade secrets, including the Selective Plating Process.

57. CIT terminated Mr. Foster's employment on or about August 5, 2020.

### 4.   *Adrian Acuna*

58. On or about February 28, 2019, CIT hired Adrian Acuna for the position of Selective Plating Technician.

59. As a condition of his employment, Mr. Acuna agreed to the terms of the Employee Handbook and the Code of Conduct.

60. As a condition of his employment, Mr. Acuna agreed not to disclose any of CIT's proprietary or confidential information that Mr. Acuna obtained during the course of his employment.

61. During Mr. Acuna's employment, CIT trained Mr. Acuna on the use of the Selective Plating Process.

62. Through his employment as Selective Plating Technician for CIT, Mr. Acuna had access to and gained intimate knowledge of certain CIT proprietary and confidential information and trade secrets, including the Selective Plating Process.

63. Upon information and belief, Foresight actively recruited Mr. Acuna and Mr. Acuna thereafter resigned from his employment with CIT on or about December 18, 2020.[1]

### *Foresight's Unlawful Conduct*

64. Upon information and belief, beginning in or about May 2020, Foresight hired each of the Former Employees for the purpose of gaining access to certain CIT proprietary and confidential information and trade secrets, particularly the Selective Plating Process.

---

[1] Ms. Valenzuela, Mr. Graff, Mr. Foster, and Mr. Acuna are referred to herein collectively as the "Former Employees."

65. On or about February 24, 2022, Foresight posted on its website and social media platforms that Foresight had a "new" and "proprietary" capability to "selective gold plate contacts with and without shoulders." Together with that description, Foresight posted a photograph of its new plating machinery, the design of which, together with its components, is nearly identical to CIT's Selective Plating Process.

66. Upon information and belief, Foresight knew, or reasonably should have known, that the Former Employees were duty-bound not to disclose or otherwise misappropriate CIT's proprietary and confidential information and trade secrets.

67. Upon information and belief, Foresight knew, or reasonably should have known, that the Selective Plating Process is proprietary and confidential and constitutes a trade secret of CIT.

## COUNT ONE

**(Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act)**

68. CIT incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

69. The Former Employees were given access to, and have knowledge of, certain of CIT's trade secrets and confidential information through their employment with CIT.

70. The Former Employees were trained in the use of CIT's proprietary Selective Plating Process, which is a trade secret.

71. CIT's valuable trade secrets and confidential information, to which the Former Employees had access, were developed at significant expense over a considerable period of time.

72. CIT's trade secrets and confidential information, to which the Former Employees had access, provide a competitive advantage to CIT over those who do not know the information, and they have independent economic value because the information is not generally known to, or readily ascertainable by proper means by, other persons who can obtain economic value from their use.

73. CIT and its predecessors have made, and continue to make, reasonable efforts to maintain the secrecy of the trade secrets at issue.

74. CIT's trade secrets and confidential information are related to a product or service used in, or intended for use in, interstate or foreign commerce.

75. CIT's trade secrets and confidential information would have significant value to a competing business, like Defendants' business.

76. At no time has CIT given its consent, express or implied, to the Former Employees to use or otherwise disclose any of CIT's trade secrets or confidential information.

77. Upon information and belief, Defendants acquired CIT's trade secrets through improper means, by soliciting the proprietary information from CIT's Former Employees, who owe a duty to CIT to maintain the secrecy of the trade secrets.

78. Upon information and belief, Defendants have used CIT's trade secrets and confidential information without CIT's express or implied consent, despite knowing, or having reason to know, that these trade secrets were acquired by improper means and through a person who owed a duty to CIT to maintain their secrecy.

79. Defendants have thus misappropriated CIT's trade secrets and have conspired with the Former Employees to misappropriate CIT's trade secrets.

80. After a reasonable opportunity to conduct further investigation and discovery, there likely will be further evidentiary support for additional factual contentions that Defendants have misappropriated CIT's trade secrets and confidential information.

81. Such misappropriation by Defendants violates 18 U.S.C. § 1836.

82. Defendants have acted willfully and maliciously in the conduct described herein.

83. Defendants' ongoing and anticipated acts of misappropriation and use of CIT's trade secrets are transgressions of a continuing nature for which CIT has no adequate remedy at law and for which injunctive relief is available under 18 U.S.C. § 1836(b).

84. Unless Defendants are permanently restrained from misappropriating CIT's trade secrets, CIT will continue to suffer immediate and irreparable harm. CIT's damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling CIT to injunctive relief.

85. In addition to injunctive relief, as a proximate result of Defendants' misappropriation of CIT's trade secret information, CIT has sustained and will continue to sustain monetary damages, including actual and exemplary damages under 18 U.S.C. § 1836(b).

86. CIT is also entitled to an award of attorneys' fees under 18 U.S.C. § 1836(b)(2)(D) for Defendants' willful and malicious misappropriation.

## COUNT TWO

**(Trade Secret Misappropriation Under the Arizona Uniform Trade Secrets Act)**

87. CIT incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

88. The Former Employees were given access to, and have knowledge of, certain of CIT's trade secrets as a consequence of their employment with CIT. Most notably, the Former Employees were trained in the use of CIT's proprietary Selective Plating Process, which is a trade secret.

89. CIT's valuable trade secrets, to which the Former Employees had access, were developed at significant expense over a considerable period of time.

90. These trade secrets have independent economic value because they are not generally known to, and not readily ascertainable by proper means by, other persons who can obtain economic value from their use.

91. CIT and its predecessors have made, and continue to make, reasonable efforts to maintain the secrecy of the trade secrets at issue.

92. At no time has CIT given its consent, express or implied, to the Former Employees to use or otherwise disclose any of CIT's trade secrets or confidential information.

93. Upon information and belief, Defendants acquired CIT's trade secrets through improper means, by soliciting the proprietary information from CIT's Former Employees, who owe a duty to CIT to maintain the secrecy of the trade secrets.

94. Upon information and belief, Defendants have misappropriated CIT's trade secrets by, among other things, creating a new plating machine that implements CIT's proprietary Selective Plating Process.

95. Such misappropriation by Defendants violates A.R.S. § 44-401, *et seq.*

96. Defendants have acted willfully and maliciously in the conduct described herein.

97. Defendants' ongoing and anticipated acts of misappropriation and use of CIT's trade secrets are transgressions of a continuing nature for which CIT has no adequate remedy at law and for which injunctive relief is available under A.R.S. § 44-402.

98. Unless Defendants are permanently restrained from misappropriating CIT's trade secrets, CIT will continue to suffer immediate and irreparable harm. CIT's damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling CIT to equitable relief in the form of an injunction.

99. In addition to injunctive relief, as a proximate result of Defendants' misappropriation of CIT's trade secret information, CIT has sustained and will continue to sustain monetary damages, including actual and exemplary damages under A.R.S. § 44-403(A) and (B).

100. CIT is also entitled to an award of attorneys' fees under A.R.S. § 44-404(3) for Defendants' willful and malicious misappropriation.

## COUNT THREE

### (Misappropriation of Confidential Information)

101. CIT incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

102. The Former Employees were given access to and have knowledge of certain confidential information as a consequence of their employment with CIT, in addition to the

Former Employees' training and instruction in the use of CIT's proprietary Selective Plating Process, which is a trade secret and CIT's confidential information.

103. This confidential information, including the Selective Plating Process, is not generally known to, and not readily ascertainable by proper means, by other persons.

104. CIT has made, and continues to make, reasonable efforts to maintain the secrecy of the confidential information at issue.

105. At no time has CIT given its consent, express or implied, to the Former Employees to use or otherwise disclose any of CIT's confidential information.

106. At no time has CIT given its consent, express or implied, to Defendants to use any of CIT's confidential information.

107. Upon information and belief, Defendants have used CIT's confidential information without CIT's express or implied consent, despite knowing, or having reason to know, that such confidential information was acquired by improper means through persons who owe a duty to CIT to maintain its secrecy.

108. Defendants have acted willfully and maliciously in the conduct described herein.

109. Defendants' ongoing, inevitable, and anticipated acts of misappropriation and use of CIT's confidential information are transgressions of a continuing nature for which CIT has no adequate remedy at law.

110. Unless Defendants are permanently restrained from misappropriating CIT's confidential information, CIT will continue to suffer immediate and irreparable harm. CIT's damages cannot be adequately compensated solely through money damages or other legal remedies, thereby entitling CIT to equitable relief in the form of an injunction.

111. In addition to injunctive relief, as a proximate result of Defendants' misappropriation of CIT's confidential information, CIT has sustained, and will continue to sustain, monetary damages.

# COUNT FOUR

### (Tortious Interference with Contract)

112. CIT incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

113. CIT had a valid and enforceable agreement with Ana Valenzuela. As a condition of her employment, Ms. Valenzuela agreed to the terms of and executed the Secrecy Agreement, under which Ms. Valenzuela agreed not to disclose any of CIT's proprietary or confidential information that Ms. Valenzuela obtained during the course of her employment.

114. CIT had a valid and enforceable agreement with Alfredo Graff. As a condition of his employment, Mr. Graff agreed to the terms of and executed the NDA, under which Mr. Graff agreed not to disclose any of CIT's proprietary or confidential information that Mr. Graff obtained during the course of his employment.

115. CIT had a valid and enforceable agreement with Glenn Foster. As a condition of his employment, Mr. Foster agreed to the terms of and executed the NDA, under which Mr. Foster agreed not to disclose any of CIT's proprietary or confidential information that Mr. Foster obtained during the course of his employment.

116. CIT had a valid and enforceable agreement with Adrian Acuna. As a condition of his employment, Mr. Acuna agreed to the terms of the Employee Handbook and the Code of Conduct and, as such, agreed not to disclose any of CIT's proprietary or confidential information that Mr. Acuna obtained during the course of his employment.

117. Upon information and belief, Defendants were aware of the contractual relationships between CIT and the Former Employees, and of the Former Employees' confidentiality obligations to CIT.

118. Upon information and belief, Defendants knowingly induced the Former Employees to breach their agreements with, including their confidentiality obligations to, CIT.

119. Upon information and belief, the Former Employees subsequently breached their confidentiality obligations to CIT by, among other things, assisting Defendants in creating a new plating machine that misappropriates and implements CIT's proprietary Selective Plating Process.

120. Defendants' interference was improper and not justified.

121. As a direct and proximate result, CIT was foreseeably damaged by Defendants' interference with CIT's existing contractual relationships, in an amount to be proven at trial.

## COUNT FIVE
### (Unfair Competition)

122. CIT incorporates by reference the allegations contained in the preceding paragraphs of the Complaint.

123. The Former Employees were given access to and have knowledge of certain confidential information as a consequence of their employment with CIT, in addition to the Former Employees' training and instruction in the use of CIT's proprietary Selective Plating Process.

124. This confidential information is not generally known to, and not readily ascertainable by proper means by, other persons.

125. CIT has made, and continues to make, reasonable efforts to maintain the secrecy of the confidential information at issue.

126. At no time has CIT given its consent, express or implied, to the Former Employees to use or otherwise disclose any of CIT's confidential information.

127. At no time has CIT given its consent, express or implied, to Defendants to use any of CIT's confidential information.

128. Upon information and belief, Defendants and the Former Employees devised and executed a scheme to improperly and unfairly misappropriate CIT's confidential information in creating Defendants' new plating machine.

129. By engaging in this scheme, Defendants have violated, and continue to violate, the standards of business practices.

130. CIT has been damaged as a result of Defendants' conduct in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, CIT requests judgment in its favor and against Defendants as follows:

1. Entry of judgment in favor of CIT and against Defendants on each and every Count in this Complaint;

2. An award of compensatory, general, and special damages, if any, in an amount to be determined at trial;

3. Preliminary and permanent injunctive relief against Defendants:

   a. Enjoining Defendants from using or disclosing CIT's confidential information and trade secrets;

   b. Requiring Defendants to destroy any and all machines that incorporate CIT's confidential information and/or trade secrets;

   c. Requiring Defendants to destroy any documents or electronic records containing CIT's confidential information and/or trade secrets; and

   d. Requiring that Defendants ensure the Former Employees are not assigned to work on developing, modifying, or improving any plating process that Defendants utilize in their business.

4. An award of punitive and exemplary damages in an amount sufficient to punish Defendants and deter it and other similarly situated individuals from engaging in similar conduct in the future;

5. Entry of an order that Defendants' actions be deemed willful;

6. An award of reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(2)(D) and A.R.S. § 44-404(3); and

7. Such other and further relief as the Court deems just and proper.

# **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CIT hereby demands a jury trial on all issues in this litigation that are triable to a jury.

DATED this 27th day of April, 2022.

SNELL & WILMER L.L.P.

By: s/ *David G. Barker*
David G. Barker
Cameron Schlagel
Emily R. Parker
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

Attorneys for Plaintiff Carlisle Interconnect Technologies, Inc.