**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlisle Interconnect Technologies Incorporated,<br><br>           Plaintiff,<br><br>vs.<br><br>Foresight Finishing LLC, et al.,<br><br>           Defendants. | No. CV-22-00717-PHX-SPL<br><br>**ORDER** |

Before the Court is the parties' Joint Motion for Discovery Dispute Resolution (Doc. 33). The Court's ruling is as follows.[1]

**I.     BACKGROUND**

Plaintiff Carlisle Interconnect Technologies Incorporated ("Plaintiff") and Defendants Foresight Finishing LLC and Foresight Finishing Properties LLC (together, "Defendants") are companies in the interconnect solutions industry. (Doc. 22 at 3). Plaintiff designs and produces "unique cable configurations, custom high-frequency connectors, complete cable assemblies of any complexity, and specialized complex harnesses, racks, and structures." (*Id.*). According to Plaintiff's Complaint, Defendants specialize in "plating connector contracts, RF components, and selective plating of loose piece contacts." (*Id.*). The parties provide their products to a wide variety of industries, and have customers in

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

the aerospace, military, space, test-and-measurement, industrial, defense, electrical, OEM, medical, and medical-technology markets. (*Id.*). Central to their business models is a process called metal plating. Plaintiff describes the traditional metal plating process in its Complaint:

> Typical metal plating involves creating an outer coating of metal—such as chromium, copper, gold, or nickel—to inhibit corrosion or to enhance the appearance of the parent metal component. The traditional process—widely used across the industry—involves immersing the metal in an acid solution (commonly referred to as a bath) with an anode electric current and cathode. The solution contains the required metal in an oxidized form. Through the process, the plating material binds on the parent metal to form an outer coating.

(*Id.* at 4).

In 2011, Plaintiff acquired Tri-Star Electronics Incorporated ("Tri-Star"), an international supplier of electronic interconnect components. (*Id.*). As part of the acquisition, Plaintiff acquired "substantial intellectual property assets, trade secrets, and proprietary information," including an *alternative* metal plating process—originally developed by Tri-Star—known as the "Selective Plating Process." (*Id.*). According to Plaintiff's Complaint, the Selective Plating Process is more efficient and superior to the traditional process and is unique in the industry. (*Id.*). The Selective Plating Process uses 65–85 percent less gold than the traditional method, resulting in $125,000 to $200,000 in savings per one million pieces processed. (*Id.*).

Plaintiff considers the Selective Plating Process a critical asset of the company. (*Id.* at 5). To maintain its secrecy and confidentiality, Plaintiff maintains the Selective Plating Process in a restricted area of its facility where only credentialed employees have access. (*Id.*). Plaintiff stores all confidential and proprietary information concerning the Selective Plating Process on a secured, restricted access drive. (*Id.*). Plaintiff's employees are bound by the company's Employee Handbook, Code of Conduct, and two specific agreements—a Confidentiality and Discretion Agreement, and an Employee Invention and Secrecy Agreement—all of which contain provisions aimed at protecting the confidential and

proprietary nature of the Selective Plating Process. (*Id.* at 5–8).

Between April 2020 and August 2020, Plaintiff terminated four employees (the "Former Employees") who "had access to and gained intimate knowledge of certain [] proprietary and confidential information and trade secrets, including the Selective Plating Process." (*Id.* at 9–11). Plaintiff alleges that Defendants hired each of the Former Employees to access and benefit from their knowledge of Plaintiff's proprietary and confidential information and trade secrets—specifically, their knowledge of the Selective Plating Process. (*Id.* at 11–12). In February 2022, Defendants posted on the company's website and social media platforms that they "had a 'new' and 'proprietary' capability to 'selective gold plate contacts with and without shoulders.'" (*Id.* at 12). Defendants included a photograph of its new plating machinery (the "Foresight Machine"), showing its design and components. (*Id.*). Plaintiff alleges that the Foresight Machine—as described in the post and shown in the photograph—utilizes a manufacturing process "nearly identical" to Plaintiff's Selective Plating Process. (*Id.*).

On April 27, 2022, Plaintiff filed this action against Defendants. (Doc. 1). Plaintiff asserts five claims against Defendants: trade secret misappropriation, in violation of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1832, *et seq.*, and of the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. § 44-401, *et seq.* (Counts I and II); misappropriation of confidential information (Count III); tortious interference with contract (Count IV); and unfair competition (Count V). (Doc. 22 at 12–19).

On December 9, 2022, the parties filed the Joint Motion for Discovery Dispute Resolution. (Doc. 33). Plaintiff seeks an order compelling Defendants to produce documents relating to and an inspection of the Foresight Machine. (*Id.* at 2–3). Defendants have refused to allow such discovery on the grounds that Plaintiff has not yet identified with sufficient particularity what trade secrets were allegedly misappropriated and are at issue in this case. (*Id.* at 3–4). Defendants seek an order requiring Plaintiff "to specifically identify each trade secret allegedly misappropriated." (*Id.* at 4).

///

## II. **LEGAL STANDARD**

The purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible," *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958), and "to narrow and clarify the basic issues [in dispute] between the parties." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947); *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) ("[T]he whole point of discovery is to learn what a party does not know or, without further information, cannot prove."); *Pac. Fisheries Inc. v. United States*, 484 F.3d 1103, 1111 (9th Cir. 2007) ("[T]he purpose of discovery is to aid a party in the preparation of its case."). Necessarily, the scope of discovery is generally very broad. Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"[T]he party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)." *Doe v. Swift Transp. Co., Inc.*, No. 2:10-cv-00899 JWS, 2015 WL 4307800, at *1 (D. Ariz. July 15, 2015). This is "a relatively low bar," *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020), as relevance in the discovery context is "defined very broadly." *EEOC v. Scottsdale Healthcare Hosps.*, No. CV-20-01894-PHX-MTL, 2021 WL 4522284, at *2 (D. Ariz. Oct. 4, 2021) (quoting *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998)); *see also Cont'l Cirs.*, 435 F. Supp. 3d at 1018–19 (citation and internal quotations omitted) ("[C]ourts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial."). Under Federal Rule of Evidence 401, information is relevant if it has "any tendency" to make a fact in dispute "more or less probable." Fed. R. Evid. 401. If the movant meets its burden of establishing relevancy, "the party opposing discovery has the burden to demonstrate that discovery should not be allowed due to burden or cost and must explain and support its objections with competent evidence." *Doe*, 2015

WL 4307800, at *1. Alternatively, the party from whom discovery is sought may move for a protective order under Rule 26. *See* Fed. R. Civ. P. 26(c)(1). Rule 26 specifically provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "The burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (citation omitted).

### III.   DISCUSSION

As an initial matter, there is no doubt that the discovery sought by Plaintiff—documents related to and an inspection of the Foresight Machine—is sufficiently relevant. Indeed, Defendants do not oppose Plaintiff's discovery request on relevancy grounds. Rather, Defendants have refused to allow such discovery on the grounds that Plaintiff has not yet identified with sufficient particularity what trade secrets were allegedly misappropriated and are at issue in this case. (Doc. 33 at 3–4). Therefore, Defendants seek an order requiring Plaintiff "to specifically identify each trade secret allegedly misappropriated." (*Id.* at 4). Conversely, Plaintiff contends that it has identified its trade secrets with sufficient particularity—at least for purposes of discovery—and that Defendants are well aware of what trade secrets are at issue in this case. (*Id.* at 3).

Courts generally require "a party alleging a claim for misappropriation of trade secrets . . . to identify its alleged trade secrets with reasonable particularity before it will be allowed to compel discovery of its adversary's trade secrets." *Switch Commc'ns Grp. v. Ballard*, No. 2:11–cv–00285–KJD–GWF, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) (listing cases). Although "[t]here is no privilege excepting trade secrets from discovery, [] courts must exercise discretion to avoid unnecessary disclosures of such information." *BioD, LLC v. Amnio Tech., LLC*, No. 2:13–cv–1670–HRH, 2014 WL 3864658, at *4 (D. Ariz. Aug. 6, 2014) (quoting *Dura Glob. Techs., Inc. v. Magna*

5

*Donnelly, Corp.*, No. 07-cv-10945, 2007 WL 4303294, at *1 (E.D. Mich. Dec. 6, 2007)). In *BioD*, a court in this District noted "four policies which support delaying trade secret discovery until the . . . plaintiff has sufficiently described the trade secrets at issue":

> (i) "[I]f discovery on the defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as 'fishing expeditions' to discover the trade secrets of a competitor."
>
> (ii) "[U]ntil the trade secret plaintiff has identified the secrets at issue with some specificity, there is no way to know whether the information sought is relevant. . . . Thus, requiring the plaintiff to sufficiently identify its trade secrets prior to allowing discovery on the defendant's trade secrets helps the court to determine the outer permissible bounds of discovery and prevents needless exposure of the defendant's trade secrets."
>
> (iii) "[I]t is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated."
>
> (iv) "[R]equiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives."

*BioD*, 2014 WL 3864658, at *4–5 (quoting *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680–81 (N.D. Ga. 2007)). That said, courts also recognize "at least three policies which support allowing the trade secret plaintiff to take discovery prior to identifying its claimed trade secrets":

> (i) "[C]ourts have highlighted a plaintiff's broad right to discovery under the Federal Rules of Civil Procedure."
>
> (ii) "[T]he trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating."
>
> (iii) "[I]f the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a 'Catch-22' because if the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing."

*Id.* at *5 (quoting *DeRubeis*, 244 F.R.D. at 680). After considering the policies on both sides, the court in *BioD* found it appropriate to require the plaintiffs to identify their trade secrets with reasonable particularity. (*Id.*). As the Court indicated in its March 10, 2023 Order (Doc. 51 at 3), this Court follows suit and will require the same.

On November 15, 2022, Plaintiff served Defendants with a "Supplemental Trade Secrets Disclosure" (the "Disclosure") in an effort to avoid this discovery dispute. (Doc. 33 at 2). Plaintiff states that "[t]he eight-page disclosure enumerated details of the Selective Plating Process and included 72 photos and videos." (*Id.* at 2–3 (emphasis omitted)). Defendants were not satisfied and responded by repeating their assertion that Plaintiff had not made a satisfactory disclosure. (*Id.* at 3). On March 10, 2023, the Court ordered Plaintiff to provide it with the Disclosure for *in camera* review. (Doc. 51 at 5). Having reviewed the Disclosure, the Court is now in position to determine whether Plaintiff has sufficiently identified its trade secrets with reasonable particularity such that Defendants should be compelled to provide the discovery Plaintiff seeks.

"'Reasonable particularity' has been defined as a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." *BioD*, 2014 WL 3864658, at *5 (quoting *Hill v. Best Med. Int'l, Inc.*, No. 09-1194, 2010 WL 2546023, at *3 (W.D. Pa. June 24, 2010)). "[W]hether a plaintiff has sufficiently disclosed its trade secrets is a fact-specific question to be decided on a case-by-case basis." *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 147 F. Supp. 3d 1147, 1155 (D. Or. 2015) (internal quotations and citation omitted).

Here, Plaintiff discloses as trade secrets "the entirety of its selective plating processes . . . including without limitation devices, assemblies, and software."[2] This includes "three types of selective plating machines." Plaintiff discloses that "[t]he entirety

---

[2] Plaintiff's Disclosure was not filed on the docket but rather submitted to the Court for *in camera* review. Thus, although the Court quotes directly from the Disclosure, it will not provide any citation to a specific docket and page number.

of each selective plating machine and process is a trade secret, including the functionality, components, arrangement of components, and associated software, all of which are individually and collectively trade secrets." Plaintiff then lists "[e]xamples of individual components" of its three machines which it considers to be trade secrets on their own *and* when considered collectively. These components include the custom top wheel, the vacuum line and pathways, the nudge tool, certain censors and cameras, the robotic arm, the custom belt, certain custom software, and the custom bath with a plating solution. The Disclosure briefly describes the functions of many of these components. For example, the custom software "runs all aspects of the machine" and "control[s] the sensors and manage[s] signals from [the sensors]." Likewise, the nudge tool "properly position[s] parts" and the sensors "determine[e] part location and orientation." The Disclosure also lists various "parameters" of the plating machines which Plaintiff considers to be trade secrets. These parameters include—for example—the "pick" and "reject" positions of the machines, tank volumes, temperature, flow rate, and amps per minute. In addition to this list of components, functions, and parameters the Disclosure included 72 photos and videos of its machines. These photos and videos were intended to supplement Plaintiff's list of components, parameters, and functions by further disclosing the machines that Plaintiff considers to be trade secrets and by showing the machines in action and fully performing their functions.

The Court finds Plaintiff's Disclosure insufficient. Although Plaintiff may ultimately be permitted to claim the entire Selective Plating Process performed by its machines as a trade secret, Plaintiff must, at this stage, "identify[] the steps in the process and explain[] how those steps make their method or process unique." *BioD*, 2014 WL 3864658, at *6. "It is simply not sufficient for plaintiffs to identify a trade secret as a 'method' [or process] without some explanation of why that 'method' [or process] could be considered a legally protectable trade secret." *Id.* Here, the Disclosure claims "the entirety of each selective plating machine and process" to be a trade secret. Although the Disclosure briefly explains the functions of many of the machines' components, it fails to

identify any specific steps in the Selective Plating Process or otherwise explain how such steps were unique to Plaintiff's particular machines. "Plaintiff[] must provide some basis for [its] contention that [its] methods and processes are unique and thus legally protectable." *Id.*

Likewise, Plaintiff may ultimately be permitted to claim most or all the machines' individual components and their collective arrangement as trade secrets. At this stage, however, Plaintiff "must specifically describe what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination." *Switch*, 2012 WL 2342929, at *5 (citation omitted); *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008) ("[I]t is insufficient to describe the trade secrets by generic category, such as the components of the [] devices to which the alleged trade secrets relate. Rather, [the plaintiff] must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data."). Plaintiff's Disclosure fails to do this. Rather, it merely lists the components and provides a few words—for *some* of those components—describing their functionality. *See Vesta Corp.*, 147 F. Supp. 3d at 1156 ("Plaintiff's disclosures do not specify any trade secrets, 'but rather reveal the end results of, or functions performed by, the claimed trade secrets.'"). The Disclosure does not explain what makes those components—or their arrangement—unique as compared to what is already publicly available or generally known. *See BioD*, 2014 WL 3864658, at *6 ("Plaintiffs must explain how the combination of much of what appears to be generally known information can constitute a trade secret.").

To be sure, Plaintiff's Disclosure comes close to satisfying the "reasonable particularity" standard. It specifies that Plaintiff's trade secrets include Plaintiff's selective plating machines *and* the entire Selective Plating Process. It lists numerous components of the machines and describes the functionality of some of those components. It also includes 72 photos and videos demonstrating what the machines and their components look like and how they function. Plaintiff's Disclosure does *not*, however, identify or explain any of the

steps in the Selective Plating Process, let alone explain how one or more of those steps make its Selective Plating Process unique. Plaintiff's Disclosure also fails to describe what components or combination of components make its design novel or unique. For these reasons, the Court cannot say that the Disclosure puts Defendants on notice of the nature of Plaintiff's trade secret misappropriation claims. The Court finds that Plaintiff has failed to identify the trade secrets at issue in this case with reasonable particularity. The Court must deny Plaintiff's request for discovery of documents related to and an inspection of Defendants' Foresight Machine. Plaintiff, of course, may amend or supplement its Disclosure and serve such an amendment or supplement on Defendants. If Plaintiff sufficiently discloses its trade secrets with reasonable particularity, then Defendants are required to provide the discovery Plaintiff seeks. Until then, however, Defendants are under no obligation to do so.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the parties' Joint Motion for Discovery Dispute Resolution (Doc. 33) is **resolved in Defendants' favor**. Plaintiff is ordered to serve on Defendants, **by no later than March 21, 2023**, a disclosure which identifies—with reasonable particularity in a manner consistent with this Order—the trade secrets which Plaintiff contends Defendants have misappropriated. Defendants need not respond to discovery requests relating to the Foresight Machine until Plaintiff complies with this Order.

**IT IS FURTHER ORDERED** that, pursuant to this Court's March 10, 2023 Order, the depositions of Adrian Acuna and Alfredo Graff remain **stayed** for a period of **ten days from the date upon which Plaintiff serves the disclosure on Defendants**.

Dated this 14th day of March, 2023.

Honorable Steven P. Logan
United States District Judge